# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JERMAINE HARRIS,       :
      :
        Petitioner,       :       Civ. No. 14-5408 (RBK)
      :
        v.       :       **OPINION**
      :
PATRICK NOGAN, et al.,       :
      :
        Respondent.       :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

## I.     INTRODUCTION

Petitioner is a state prisoner and is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury on multiple counts including conspiracy to commit robbery, first-degree robbery, aggravated assault, and a number of weapons charges.  He is currently serving twenty years with an eighty-five percent period of parole ineligibility for armed robbery and a consecutive ten year term of imprisonment with five years of parole ineligibility on a weapons offense.  Petitioner raises several claims in his habeas petition.  For the following reasons, the habeas petition will be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

On the evening of August 5, 2005, Tair Jumaniyaazoe[Fn1] was working alone at a Citgo Gas Station in Pleasantville, New Jersey at 10:30 p.m. As he was pumping gas, two men approached him and asked to buy cigarettes. Tair stepped inside the booth while the two men waited outside. As Tair was retrieving the cigarettes, the men stepped inside the booth. When Tair turned around, he observed one of the men pointing a gun at his lower back while the other man emptied the drawers looking for money. Tair indicated that both men were black males and both were approximately six feet tall. The gunman was wearing a white shirt, blue

_____

[1] The factual background is taken from the Superior Court of New Jersey, Appellate Division opinion on petitioner's direct appeal that was decided on March 23, 2009.  (*See* Dkt. No. 7-8.)

jeans, boots and a black hat with the letter "P" on it. The gunman had a thick beard and neck-length braids. The other man was wearing a white t-shirt and stone-washed blue jeans. He had a "fresh haircut" with a "thin" beard. Tair described the gun as "brown stock," old fashioned with a "long barrel" and a "classic."

[Fn. 1] For ease of reference, we refer to this witness by his first name.

The gunman took the cash from Tair while the second man took rolled change from the drawers and put them inside a Designer Shoe Warehouse (DSW) bag that had previously contained Tair's dinner. Tair estimated that about $116 to $130 in cash was taken. The men then cut the fax line and walked away from the gas station. The whole incident lasted approximately three minutes. After the two men left, Tair used his cellular phone to call the police. Immediately thereafter, at about 10:30 p.m., Pleasantville police officers arrived at the scene. Tair told the officers that he had been robbed, described the robbers and told them how the robbery had occurred.

Approximately twenty-minutes later, at about 10:50 p.m., Atlantic City K-9 Patrolman Salvatore Rando observed a red vehicle traveling in the opposite direction from the gas station. Patrolman Rando radioed for back-up and followed the car. The car eventually pulled over to the side of the road, and two passengers exited the vehicle. Defendant exited out of the driver's side, and an individual named Blair Williams exited out of the passenger side. Patrolman Rando approached defendant and Williams and spoke to them while awaiting back-up. Within seconds several officers arrived and "secured" defendant and Williams.

Patrolman Rando inspected the vehicle with a flashlight and "immediately" saw "a long barreled handgun" underneath the seat cushion on the passenger's side. Patrolman Rando also found a DSW bag between the two front seats with rolls of coins inside. At a later time, Pleasantville police officer Richard Henderson observed a black hat embossed with a "P" and a scarf in the back seat of the vehicle.

The Pleasantville police received notification that the Atlantic City police had located some suspects. Tair and another witness, Mr. Ernesto Santos, were driven to Atlantic City to view the suspects; they did not speak to each other while traveling. Once the two witnesses arrived in Atlantic City, defendant and Williams were taken out of the police vehicle. They stood in the street in full frontal view with their hands cuffed behind their backs and spotlights used for illumination. While sitting in the back seat of the patrol car, Tair and the witness identified

defendant and Williams as the robbers. At the time, neither defendant nor Williams had neck length braids. Defendant and Williams were initially processed in Atlantic City.

The next day the two men were transferred to the Pleasantville Police Department to be processed. Defendant had $125, a "pair of jean shorts, a pair of olive Timberland boots, black doo rag, shoelaces, black belt, black wrist band, [and a] Timberland leather key chain." Williams had $25.

Defendant was tried separately and during the trial, Christopher Hallett, an investigator for the Atlantic County Prosecutor's Office, discussed all of the efforts he made in procuring the second witness, Santos. Investigator Hallett testified that he was assigned to the case and interviewed Santos on January 31, 2007. However, when Investigator Hallet made several attempts to contact Santos in preparation for trial, he was unable to do so.

Defendant testified at trial. Defendant stated that Blair Williams was a childhood friend that he had not seen in a while. He met Williams in Camden; and Williams invited defendant to his apartment to "catch up on old times." Once they were in the apartment, Williams stated that he wanted to go to a liquor store and pick up some cigars so they can "get reacquainted." Defendant had no idea where the liquor store or the Citgo gas station was in relation to Williams' apartment. Five to ten minutes later, Williams returned with nothing in his hands. Williams told defendant that they were going to drive to Atlantic City to pick up his girlfriend at work. Williams stated that he was late picking up his girlfriend "Pinky" and that he wanted defendant to drive so that they could use defendant's unfamiliarity with the area as an excuse for the lateness. Williams directed defendant, telling him exactly where to drive. Once they arrived in Atlantic City, Williams told defendant to make a right turn and to pull over. Defendant then assumed that they had arrived at their destination and exited the vehicle. At this point, they were stopped by K-9 Patrolman Rando. Defendant denied that he was at the gas station at the time of the robbery and claimed that he never saw the gun that was found in the car.

(Dkt. No. 7-8 at p. 2-6.)

After petitioner was convicted and sentenced, he appealed to the Superior Court of New Jersey, Appellate Division. The Appellate Division affirmed. *See State v. Harris*, No. A-1652-07T4, 2009 WL 735757 (N.J. Super. Ct. App. Div. Mar. 23, 2009). The New Jersey Supreme Court denied certification on May 8, 2009. *State v. Harris*, 973 A.2d 384 (N.J. 2009).

Petitioner subsequently filed a petition for post-conviction relief ("PCR") in the Superior Court of New Jersey, Atlantic County, in March, 2010. That court denied the PCR petition on December 3, 2010. (*See* Dkt. No. 7-14.) The Appellate Division affirmed that denial on July 15, 2013. (*See* Dkt. No. 7-17.) The New Jersey Supreme Court denied certification on the PCR petition on February 21, 2014. (*See* Dkt. No. 7-18.)

Petitioner then initiated this federal proceeding by filing a petition for writ of habeas corpus in August, 2014. The respondent filed his response on October 28, 2014.

## III.    HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also*, *Mason v. Myers*, 208 F.3d at 415 n.1 (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law'

under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, - U.S. -, 131 S. Ct. 1388, 1398 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

# IV.    DISCUSSION

Petitioner raises multiple claims in his habeas petition; specifically:

1. State court's ruling that the police officer's repeated references to the presence of a non-testifying eye witness at the show-up where Petitioner was identified as a robber was not a denial of Petitioner's right to due process, a fair trial, and witness confrontation was contrary to clearly established federal law, and an unreasonable application thereof.

2. State court's ruling that Petitioner was not deprived of his due process right to a fair trial as a result of the prosecutorial misconduct was contrary to clearly established federal law, and an unreasonable application thereof.

3. State court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to the effective assistance of counsel where the "show-up" procedure used by the police was impermissibly suggestive and defense counsel failed to request a *Wade* hearing was contrary to clearly established federal law, and an unreasonable application thereof.

4. State court's ruling that Petitioner was not denied the effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution by (A) counsel's failure to object to the prosecution's opening statement where the jury was advised they would hear from petitioner's co-defendant, who was never called, and (B) counsel's refusal to permit the trial court to include second degree robbery on the verdict sheet, though the court had charged the offense to the jury, was contrary to clearly established federal law, and an unreasonable application thereof.

These Claims will be considered in turn.

A. Claim I – References to Non-Testifying Witness at the "Show Up" Identification

Petitioner makes two arguments with respect to his claim that references at trial to the presence of a non-testifying witness at the "show up" in which Petitioner was identified as a robber violated his constitutional rights.[2]  First, he claims that testifying police officers' references to Mr. Santos' presence at the "show up" implied that Mr. Santos identified Petitioner as a robber and therefore amounted to improper third-party hearsay and bolstering of the evidence in violation of *State v. Bankston*,[3] thereby violating his right to a fair trial.  Second, he claims that the introduction of the implied hearsay violates the Confrontation Clause.  The last reasoned decision from the state courts on this Claim was from the Appellate Division on direct appeal.  That court analyzed these issues as follows:

> Clearly, there were various references to more than one witness at the show-up. At various times during the trial, Tair and Santos were referred to in the plural, and at least one point, an officer identified Santos as being present. Defense counsel did raise an objection to the references to Santos, the unavailable witness. During side-bar, the following discussion took place:
>
>> [DEFENSE COUNSEL]: To avoid a situation that is coming up here, I see-they are-he is using this phrase: They ... they ... they ... I don't believe the prosecutor has indicated he intends to put Mr. Santos on the stand. I want to make sure that if he's not going to try to elicit from this officer how the identifications went and what words this guy said Santos said this hearsay as well even for Tair that this officer will say that Tair-
>>
>> THE COURT: Is Santos testifying?
>>
>> [PROSECUTOR]: First of all, I was not going to go there. We can't find Santos. He certainly can testify to a prior identification Tair-

---

[2] Petitioner did not file a brief in support of his Petition. Instead, for Claims I, II, and III, Petitioner relies on the brief his counsel filed on direct appeal. For Claim IV, though Petitioner does not so state, the Court presumes that Petitioner relies on the briefs filed in support of his Petition for Post-Conviction Relief, which is where this Claim was raised before the state courts.
[3] *State v. Bankston*, 307 A.2d 65 (N.J. 1973).

THE COURT: If-who made it?

[DEFENSE COUNSEL]: Testified that this other person who is not testifying.

[PROSECUTOR]: No, he is going to testify that Tair made the identification, that's it. I am not going to get into Santos.

[DEFENSE COUNSEL] Okay. I heard, they ... they; I wanted to make sure.

THE COURT: Okay.

Critically, the record is devoid of any reference to Santos making a positive or negative identification of the defendant. The only testimony referring to Santos, thereafter, addressed the State's inability to locate Santos for trial.

Defendant argues that "[t]he logical reasoning is: If Santos and Tair were seated in the same patrol car, and taken to the same place, for the same purpose, then they must have made the same identification." Consequently, the repeated references to Santos at the show-up "impliedly corroborated" Tair's positive identification of defendant. Defendant claims that this inference is analogous to impermissible hearsay that arises when a testifying witness repeats statements made by a non-testifying witness, which is a violation of *Bankston*. We reject this as pure conjecture.

In *Bankston,* defendant was convicted for possession of heroin. *Bankston, supra,* 63 N.J. at 266, 307 A.2d 65. During the opening statement the prosecution stated that the defendant was under "investigation." During trial, a detective testified that they had entered the bar and arrested defendant based on a tip from an informant. The detective stated, "we were looking for a certain individual. We had a description of his clothing. He was inside the tavern.... We were looking for an individual that had narcotics in his possession." *Ibid.* The Supreme Court noted that a police officer can explain "the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received[ ]' " to "show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct." *Id.* at 268, 307 A.2d 65. However, "when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused[,] the testimony violates the hearsay rule ... [and

his] Sixth Amendment right to be confronted by witnesses against him." *Id.* at 268-69, 307 A.2d 65. The Court noted that "[w]hen the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." *Id.* at 271, 307 A.2d 65. The Court found that the "inescapable inference from [the detective's] testimony was that the informer had given information that defendant would have narcotics in his possession" and reversed the conviction. *Ibid.*

The Court further explained *Bankston* and subsequent cases by stating that "'[t]he common thread that runs through [the *Bankston* cases] is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant.'" *State v. Kemp,* 195 *N.J.* 136, 155, 948 A.2d 636 (2008)(quoting *State v. Branch,* 182 *N.J.* 338, 351, 865 A.2d 673 (2005)). Therefore, a police officer is allowed to use the phrase "based on information received" to explain his actions "only if necessary to rebut a suggestion that they acted arbitrarily and only if the use of that phrase does not create an inference that the defendant has been implicated in a crime by some unknown person." *Branch, supra,* 182 *N.J.* at 352, 865 A.2d 673.

Here, defendant argues that the officers' references to Santos created the implication that Santos had positively identified defendant as one of the robbers. In other words, the officers "possesse[d] superior knowledge, outside the record, that incriminate[d] defendant." *Kemp, supra,* 195 *N.J.* at 155, 948 A.2d 636. This implication was bolstered by the fact that the State offered testimony from Investigator Hallett to explain the reason why Santos was not available as a witness.

We agree with the State that the limited references to Santos leads to "considerable speculation" as to the impact it had on bolstering Tair's testimony. Further, the State correctly notes that its proffer of testimony as to the reason why Santos was unavailable was to counter any negative inferences that could be drawn from his absence.

Defendant's argument is without merit. At trial, the State presented only the victim's own identification of defendant. References to Santos were contextually appropriate and would not lead to the "inescapable" implication that Santos made a positive identification. Tair's positive identification of the suspects minimized any speculation as to whether or not Santos made a positive identification.

We reach a similar result as to the Confrontation Clause. Defendant argues that the references made to Santos implied that he had positively identified the defendant, which constitutes a violation of the Confrontation Clause of the Sixth Amendment, *U.S. Const.* amend. VI, and our own State Constitution, *N.J. Const.* art. I, ¶ 10.

Both the Sixth Amendment of the Constitution and Article Ten of our State Constitution provide that "'[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him [.]'" *State v. Buda,* 195 *N.J.* 278, 299, 949 A.2d 761 (2008) (quoting *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10). In *Crawford v. Washington,* 541 *U.S.* 36, 124 *S.Ct.* 1354, 158 *L. Ed.*2d 177 (2004), the United States Supreme Court adopted a two-pronged test: "Testimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 *S.Ct.* at 1369. The Court noted that "[t]he text of the Confrontation Clause ... applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' " *Id.* at 51, 124 *S.Ct.* at 1364, 158 *L. Ed.*2d at 197 (citations omitted). It further stated that "'[t]estimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Ibid.* (citation omitted). The Court noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Ibid.*

However, the Court declined to provide a bright line definition of what constitutes "testimony." Among other things, it stated that "the admissibility of non-hearsay testimonial statements is not affected or otherwise influenced by Confrontation Clause considerations." *Buda, supra.,* 195 *N.J.* at 301, 949 A.2d 761 (citing *Crawford, supra,* 541 *U.S.* at 59 n. 9, 124 *S.Ct.* at 1369 n. 9., 158 *L. Ed.*2d at 197 n. 9).

Defendant argues that the testimony referring to Santos was testimonial in nature because it created the implication that Santos identified Harris. We reach the same result here as we did with the earlier thematic argument-the limited references to Santos were neither hearsay nor do they implicate the Confrontation Clause.

(Dkt. No. 7-8 at p. 8-14.)

The Confrontation Clause of the Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. The United States Supreme Court has stated with respect to the Confrontation Clause that, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (footnote omitted). "As to the second requirement, the Confrontation Clause requires that a defendant have had 'a full and fair opportunity to probe and expose [testimonial] infirmities' of an unavailable government witness in order for that witness's prior testimony to be admissible." *Ross v. Dist. Attorney of Cnty. of Allegheny,* 672 F.3d 198, 206–07 (3d Cir.2012) (citing *United Staets v. Owens,* 484 U.S. 554, 558, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985))). The Confrontation Clause applies only to testimonial hearsay that is admitted to establish the truth of the matter asserted. *See Davis v. Washington,* 547 U.S. 813, 823–25, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." *United States v. Hinton,* 423 F.3d 355, 360 (3d Cir.2005).

This Court finds that the Appellate Division did not unreasonable apply clearly established federal law or deny Petitioner's Confrontation Clause claim based on an unreasonable determination of the facts. As the Appellate Division found and as the record demonstrates, the trial did not include any evidence or testimony regarding Mr. Santos' identification of Petitioner at the "show up" or any other statements he may have made. Because there was no introduction of testimonial hearsay at trial, *see Davis,* 547 U.S. at 823–25, the

Appellate Division's decision that the contextual references to Mr. Santos' presence did not implicate issues of hearsay or of the Confrontation Clause was a reasonable application of federal law. Similarly, because the references to Santos were contextual and did not constitute hearsay, implied or otherwise, the references did not deprive Petitioner of his right to a fair trial. Accordingly, habeas relief is not warranted on Claim I and it will be denied.

B. <u>Claim II – Prosecutorial Misconduct Arising from the Prosecutor's Opening Statement</u>

Petitioner raises two challenges to the prosecutor's opening statement at trial. First, he argues that the prosecutor implied that Petitioner was a career criminal and thereby lowered the State's burden of proof. Second, Petitioner asserts that the prosecutor expressed his personal opinion and directed the jury on how to interpret inconsistent facts and evidence in the case.

Petitioner argued as follows in the state courts with respect to the prosecutor's impliedly labeling Petitioner as a career criminal:

In his opening remarks, the Prosecutor said,

[STATE] . . . Ladies and gentlemen, this is a case about three people working hard on a hot summer night in 2005. . . . The first ones name is Tair Jumaniyaazoee. You will learn on August 5th, 2005, Tair was . . . working at the Citgo Gas Station . . . perhaps not a very glamorous job by today's standards but nonetheless good, hard, honest work . . . . [A]nd Tair was doing all of this because he needed money. He was working.

The other two individuals that decided to come to the Citgo Gas Station and do some work on the evening of August 5th, 2005, one of them is an individual by the name of Blair Williams. He's not a party to this action. The other individual that Blair Williams came with is this defendant: Jermaine Harris. And what the evidence is going to show, ladies and gentlemen, is that this defendant and Blair Williams came to the Citgo Gas Station for the very same reason Tair Jumaniyaazoe was there: they needed money, that's why they came. But they didn't come to the Citgo Gas Station with squeegees for a windshield, or a tire iron

12

for a tire, or any other engine analyzer; they did come to the gas station with a tool, specifically this defendant came to the gas station with a tool, and his tool was a loaded .38 caliber handgun.

Now, what you're going to learn during the course of this trial, ladies and gentlemen, is that this defendant and Blair Williams came to that gas station by car, . . . but they didn't pull up to the pumps or to the store, . . . because when they were done their work at the gas station, they didn't want anything to pop up that would keep them there any longer than they had to be, so they parked a short distance away.

. . . .

These remarks, in which the victim was described as an upstanding citizen, and the perpetrators were characterized as career criminals, bolstered the credibility of any and all of the State's potential witnesses, and irreparably damaged the defense. Moreover, such remarks immediately undermined the defendant's credibility and shifted the burden of proof in the case; thus, the defendant had to disprove the allegations against him.

(Dkt. No. 7-6 at p. 49-50; 52 (internal citations omitted).)  Petitioner further argued that the prosecutor's statements implied that Petitioner had no means of income and made a living through crime. (*Id.* at pp. 54-55.)

With respect to his claim that the prosecutor expressed his personal opinions and instructed the jury on how to resolve inconsistencies in the evidence, Petitioner argued before the state court as follows:

After labeling the defendant, the Prosecutor continued:

[STATE] . . . And as with all evidence, there's going to be in some inconsistencies. *I would suggest that if all of the State's evidence was entirely consistent, you might be a little skeptical about it*, entirely consistent evidence like a t.v. show. You are going to learn that when officers from Pleasantville first responded to the Citgo Gas Station and spoke with Tair although he described the gun man as having a heavier beard, blue jeans, white T-shirt, yellow boots and the black "P" hat, *Tair said – at least these detectives reported – that the individual had braided hair*. . . . In the real

13

world, ladies and gentlemen, individuals with guns in their sides are actually terrorized. *And although this defendant did not have braided hair, you will learn that when he was taken into custody he had something that I will submit to you at the end of the trial is easily confused with braided hair under that situation. He had a black doo rag, a doo rag if worn underneath of a black hat, falls underneath the neck, not only that but a doo rag that has strings tied in the back would fall out of the back.*

These remarks constituted an expression of the Prosecutor's personal opinion and thereby directed the jury on how to interpret the inconsistent facts and evidence within the case. . . . Such emphasis [on an inconsistency] minimized the basis of the defense: the defense of misidentification. . . . This left no room for the jury to acquit the defendant based on evidentiary inconsistency.

(Dkt. No. 7-6 at pp. 57-58 (emphasis in original) (internal citations omitted).)

The last reasoned decision on these prosecutorial misconduct issues was from the

Appellate Division on petitioner's direct appeal which analyzed them as follows:

We also reject defendant's remaining arguments that the prosecutor's comments were inappropriate . . . . Contrary to defendant's assertions, the prosecutor neither labeled him a "career criminal" nor commented on his economic status, and the prosecutor's comments were within the bounds of propriety; moreover, we do not discern that the prosecutor interjected his personal opinion when presenting his opening.

(Dkt. No. 7-8 at p. 24.)

A criminal defendant's due process rights are violated if prosecutorial misconduct

renders a trial fundamentally unfair. *See Darden v. Wainright*, 477 U.S. 168, 182-83 (1986). A

habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

at 181 (internal quotation marks and citation omitted). A prosecutorial misconduct claim is

examined in "light of the record as a whole" in order to determine whether the conduct "had a

substantial and injurious effect or influence" on the jury's verdict. *See Brecht v. Abrahamson*,

507 U.S. 619, 638 (1993). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Petitioner's first argument is that the prosecutor's "work" theme improperly labeled Petitioner as a career criminal who had a propensity to commit crimes. The Appellate Division determined that the prosecutor's statements did not make such an implication and that they were not improper. In doing so, that court rejected Petitioner's assertion that the comments denied him his right to a fair trial. After reviewing the record with respect to the prosecutor's opening statement (*see* Dkt. No. 7-1 at pp. 7-20), the Court concludes that the state court's denial of this claim was not based on an unreasonable determination of the facts or an unreasonable application of clearly established federal law. The prosecutor summarized the facts and evidence that would be produced at trial regarding only this robbery and its surrounding circumstances. As the Appellate Division found, the prosecutor did not describe Petitioner as a "career criminal" in any way, nor did he state that Petitioner had no means of income and was thus likely to commit crimes for financial gain. Petitioner's argument rests solely on speculative inferences of implications that are not supported by the record. The Appellate Division's determination that the statements were not improper, and therefore did not render Petitioner's trial fundamentally unfair, was reasonable and does not afford a basis for habeas relief.

Petitioner next argues that the prosecutor improperly expressed his own opinion in his opening remarks to the jury. The Appellate Division concluded that the prosecutor had not injected personal opinions in his opening remarks. The Court finds that the Appellate Division's ruling was not based on an unreasonable determination of the facts or an unreasonable

application of federal law. First, the prosecutor is entitled to considerable latitude to argue the evidence and reasonable inferences that can be drawn from that evidence. *See United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). Here, contrary to Petitioner's claims, the prosecutor did not instruct the jury on how to determine the facts of the case and he did not state personal opinions. Rather, the prosecutor raised inferences that potentially could have been drawn from the evidence to be presented. Furthermore, the prosecutor did not state his personal opinion or belief in the Petitioner's guilt. *See Fahy v. Horn*, 516 F.3d 169, 203 (3d Cir. 2008) (noting that a prosecutor cannot express his personal belief in the credibility of a witness or the guilt of a defendant). Finally, it is worth noting that the jury was specifically instructed that the prosecutor's opening statement was not evidence, (*see* Dkt. No. 7-1 at p. 3.) and that it needed to base its decision on the evidence in the case. (*See id*.) The jury is presumed to have followed the instructions given to it by the trial judge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Accordingly, under such circumstances, the Court finds that petitioner is not entitled to habeas relief on this Claim.

C. Claim III – Show-Up Identification and Ineffective Assistance of Counsel for Not Requesting a *Wade* Hearing

In Claim III, Petitioner raises two issues. First, Petitioner argues that the "show up" identification procedure employed by the police was impermissibly suggestive and unreliable. Second, he argues that his trial counsel was ineffective for failing to request a *Wade*[4] hearing to challenge the identification. As discussed below, the Court finds that the Appellate Division's decisions on these points was not based on an unreasonable determination of the facts or an unreasonable application of federal law. Petitioner therefore is not entitled to habeas relief on this Claim.

---

[4] *United States v. Wade*, 388 U.S. 218 (1967)

1.  <u>The Show Up Identification</u>

The last reasoned decision on Petitioner's identification claim was from the Appellate

Division, which analyzed the claim as follows:

> Defendant asserts that the show-up procedure was impermissibly suggestive and created a likelihood of misidentification. Defendant argues that the show-up procedure was impermissibly suggestive because the identification was made in custodial circumstances; Tair's description of the robbers lacked "key details regarding the description of the individual's appearances"; and Tair's identification of defendant was "heightened" by the presence of Williams and Santos' positive identification. We disagree.

> The New Jersey Supreme Court has adopted the United States Supreme Court's two-step analysis to determine the admissibility of out-of-court identifications. *See Manson v. Brathwaite,* 432 U.S. 98, 110, 97 *S.Ct.* 2243, 2251, 53 *L. Ed.*2d 140, 151 (1977); *Neil v. Biggers,* 409 *U.S.* 188, 198-99, 93 *S.Ct.* 375, 382, 34 *L. Ed.*2d 401, 411 (1972); *State v. Madison,* 109 *N.J.* 223, 233, 536 A.2d 254 (1988). First, a reviewing court must determine "whether the identification procedure was impermissibly suggestive." *State v. Romero,* 191 *N.J.* 59, 76, 922 A.2d 693 (2007) (citation omitted). If it determines that the procedure was impermissibly suggestive, a court must determine "whether the impermissibly suggestive procedure was nevertheless reliable" by considering the "totality of the circumstances" and "weighing the suggestive nature of the identification against the reliability of the identification." *Ibid.* The Supreme Court has held that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson, supra,* 432 *U.S.* at 114, 97 *S.Ct.* at 2253, 53 *L. Ed.*2d at 153.

> Our Supreme Court has noted that "one-on-one showups are inherently suggestive" and "only a little more is required in a showup to tip the scale toward impermissibly suggestive[.]" *State v. Herrera,* 187 *N.J.* 493, 504, 902 A.2d 177 (2006). However, "standing alone a showup is not so impermissibly suggestive to warrant proceeding to the second step." *Ibid.* Show-ups have been permitted because "they are likely to be accurate, taking place, as they do, before memory has faded and because they facilitate and enhance fast and effective police action and they tend to avoid or minimize inconvenience and embarrassment to the innocent." *Ibid.* (internal quotations and editing marks omitted). Therefore, "[e]ach showup setting must necessarily stand or fall on its own unique facts." *Romero, supra,* 191 *N.J.* at 77, 922 A.2d 693.

In *Herrera, supra,* the victim was assaulted, his car was stolen, and he was hospitalized. Police subsequently told the victim "we found your car, we located your car with somebody in it, we want you to come with us to identify the person." *Id.* at 506, 902 A.2d 177. Our Court has noted that these comments made the showup impermissibly suggestive because "they may have influenced the victim to develop a firmer resolve to identify someone he might otherwise have been uncertain was the culprit." *Ibid.*

In *Romero, supra,* the victim, who had previously been attacked, chanced upon someone he believed to be his attacker and "recognized" his face immediately. *Id.* at 77, 922 A.2d 693. The victim called the police and described the assailant. After some searching, the police saw the defendant, who matched the description, and arrested him. The police then drove the defendant to the victim's home, told the victim "we have somebody that fits the description [that] you described," and asked "[w]hy don't you take a walk around the corner with us and see if this is the person." *Id.* at 77-78, 922 A.2d 693. The victim viewed the defendant through the side window of the patrol car and identified him as his attacker. *Id.* at 78, 922 A.2d 693. The Court distinguished the facts from *Herrera* and held that the show-up was not impermissibly suggestive for several reasons: (1) it appeared that the police was motivated by a concern not to detain a potentially innocent person; (2) the police merely told the victim that "they had detained someone who fit the description given by [the victim] minutes earlier"[;] (3) that when presenting a man fitting the victim's "unsolicited description, the police made no representations that he was the man who attacked [the victim], only that he matched [the victim]'s description"[;] and (4) "[t]he fact that defendant was handcuffed in the police car did not convert this showup identification into one that was impermissibly suggestive." *Id.* at 78-79, 922 A.2d 693.

In *State v. Wilson,* 362 *N.J.Super.* 319, 327, 827 A.2d 1143 (App. Div. 2003), which was approvingly cited by *Romero,* we found that the witnesses' identification of the defendant seated and handcuffed in the back of the police car was suggestive but that "such suggestive circumstances did not render the identification procedure per se improper and unconstitutional." *Ibid.*

Here, the show-up was not impermissibly suggestive. The show-up was conducted as soon as possible after the suspects were apprehended, thirty to forty minutes after the initial observation, while the witnesses' memories were still fresh. Tair and Santos were instructed not to speak to each other while they were being driven to Atlantic City, and they complied. The fact that the suspects were handcuffed does not make it "per se improper." *Ibid.* Officer Henderson, while transporting Tair and Santos to Atlantic City, told them, "[t]hese may be possibl[y the culprits],

it may not be" and "I want you to view these guys at this point and ... it's up to you guys to let me know if these are the individuals ... who came to the gas station." Nothing in the record suggests that the police influenced the witnesses in any way.

When determining whether the impermissibly suggestive show-up procedure was nevertheless sufficiently reliable to warrant the admissibility of the identification by the victim, courts must consider the totality of the circumstances surrounding the identification procedure and weigh the *Manson* factors against the "corrupting effect of the suggestive procedure." *Herrera, supra,* 187 *N.J.* at 506-07, 902 A.2d 177 (quoting *State v. Madison,* 109 *N.J.* 223, 240, 536 A.2d 254 (1988)). The factors listed in *Mason* are "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson, supra,* 432 *U.S.* at 114, 97 *S.Ct.* at 2253, 53 *L. Ed.*2d at 151.

Our review of the *Mason* factors supports a reliable identification. Tair indicated that he "took an opportunity to get a good look at [the robbers]" during the robbery and scanned them while they were walking away in order to "report [it] to the police ." He paid attention to details such as the face, height, shoes, weight and hair style and was able to provide a detailed description of each robber-what they were wearing, their haircuts, facial hair-which matched the descriptions of the suspects. The only detail that did not match was that Tair described the gunman as having neck-length braids, but, at the time, neither defendant nor Williams had neck-length braids. During the show-up procedure, Tair's identification of defendant was immediate and positive; he showed no hesitancy. We conclude that Tair's identification was sufficiently reliable to overcome any claim of an impermissibly suggestive showup procedure.

(Dkt. No. 7-8 at pp. 17-22.)

The Supreme Court set forth the standard governing the admissibility of an out of court identification in *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Pursuant to *Manson*, an identification procedure violates due process and is thus inadmissible if it "both (1) [is] unnecessarily suggestive and (2) creates a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137–38 (3d Cir. 2006). Thus, even if an identification procedure is unnecessarily suggestive, the identification may still be admitted at trial so long as the

identification is reliable. *Manson v. Brathwaite*, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony"). The "central question" is "whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 106 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)) (internal quotations omitted). The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.*

Petitioner argued before the Appellate Division that the witness' identification at the "show up" was impermissibly suggestive and unreliable. The Appellate Division concluded that the identification procedure was not impermissibly suggestive and, even if it were, that court also concluded that the identification was reliable. Upon review of the record as discussed above, this Court concludes that the Appellate Division reasonably applied federal law and based its decision on a reasonable determination of the facts. The Appellate Division applied the correct standard as announced by the United States Supreme Court in *Manson* and *Biggers*, including the factors to be considered in determining whether the identification was reliable. Specifically, the record reflects that Tair, the identifying witness, had sufficient opportunity to view Petitioner and Mr. Williams at the time of the robbery and had done so for the purposes of providing a description to the police. Similarly, the witness demonstrated a sufficient level of attention in his observations and was able to describe the perpetrator's clothing, features, and the gun used in the robbery. Other than the witness' inclusion of neck-length braids in his description of the gunman, his prior description was accurate and matched clothing and other details regarding Petitioner, Mr. Williams, and items found in their vehicle. In addition, the witness demonstrated certainty

and stated that he was positive about the identification. Moreover, the time between the

confrontation and the identification was a relatively brief thirty to forty minutes. Under these

circumstances, the Appellate Division did not unreasonably apply federal law and Petitioner is

not entitled to habeas relief on this claim.

   2.   Ineffective Assistance of Counsel for Not Requesting a *Wade* Hearing

With respect to Petitioner's claim that his counsel was ineffective for failing to request a

*Wade* hearing to challenge the identification, the Appellate Division reasoned as follows:

> We, likewise, reject defendant's claim that counsel's failure to request a *Wade* hearing[Fn.3] constituted ineffective assistance of counsel. While we could defer this claim to an application for Post-Conviction Relief, *Rule* 3:22-1, we are satisfied that the record is sufficient to address this claim with finality.

> [Fn. 3] *United States v. Wade*, 388 U.S. 218 (1967)

> We restate the basic principles that apply to such a claim. When determining if defendant established a *prima facie* claim of ineffective assistance of counsel, "courts should view the facts in the light most favorable to a defendant." *State v. Preciose,* 129 *N.J.* 451, 462-63, 609 A.2d 1280 (1992). To establish a *prima facie* claim of ineffective assistance of counsel, the applicable test is set forth in *Strickland v. Washington,* 466 *U.S.* 668, 694, 104 *S.Ct.* 2052, 2068, 80 *L. Ed.*2d 674, 693 (1984) and *United States v. Cronic,* 466 *U.S.* 648, 104 *S.Ct.* 2039, 80 *L. Ed.*2d 657 (1984), adopted by the Supreme Court of New Jersey in *State v. Fritz,* 105 *N.J.* 42, 58, 519 A.2d 336 (1987). Under the *Strickland-Cronic-Fritz* standard, defendant must prove that: "1) counsel's performance was deficient and that 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allegro,* 193 *N.J.* 352, 366, 939 A.2d 754 (2008) (quoting *State v. Loftin,* 191 *N.J.* 172, 197-98, 922 A.2d 1210, (2007)) (internal quotation marks omitted). To restate, "a defendant must prove an objectively deficient performance by defense counsel, *and* that such deficient performance so inured to the defendant's prejudice that it is reasonably probable that the result would be altered." *Allegro, supra,* 193 *N.J.* at 366, 939 A.2d 754.

> Here, defendant cannot succeed on the second prong of the *Strickland-Cronic-Fritz* standard since, as we have determined, the show-

> up procedure was not impermissibly suggestive, and the identification was
> reliable.

(Dkt. No. 7-8 at pp. 22-24.)

In *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Ross v. Varano,* 712 F.3d 784, 798 (3d Cir.2013). Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland,* 466 U.S. at 690. The federal court must then determine whether in light of all of the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *See id.*

Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694; *see also McBride v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n. 11 (3d Cir.2012). "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir.2010) (quoting *Strickland,* 466 U.S. at 697).

Additionally, in assessing an ineffective assistance of counsel claim under AEDPA, the Supreme Court has noted that:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington,* 562 U.S. at 101 (internal quotation marks and citation omitted) (emphasis in original).

On direct appeal, Petitioner argued that his trial counsel was ineffective for failing to request a *Wade* hearing in order to challenge the out-of-court identification procedure. The Appellate Division concluded that Petitioner could not demonstrate prejudice, as required under *Strickland*, because the identification was not impermissibly suggestive or unreliable. This court concludes that the Appellate Division's decision was based on a reasonable application of federal law and a reasonable determination of the facts. The Appellate Division identified and applied the appropriate standard under *Strickland*. Specifically, that court found that Petitioner could not demonstrate a reasonable probability that the outcome of the trial would have been different if counsel had requested a *Wade* hearing because the identification was admissible under the reliability analysis under *Manson* and *Biggers*. In order to succeed on a claim of ineffective of counsel based on counsel's failure to request a *Wade* hearing, Petitioner "must show that he would likely have prevailed [in the hearing] and that, having prevailed, there is a reasonable likelihood that he would not have been convicted." *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir.

2005). Petitioner has not made such a showing and therefore he is not entitled to habeas relief on this Claim.

D.  Claim IV – Ineffective Assistance of Counsel by Failing to Object to the Prosecution's Opening Statement and Failing to Include Second Degree Robbery on the Verdict Sheet

In Claim IV, Petitioner makes two additional arguments regarding the effectiveness of his trial counsel. First, Petitioner argues that trial counsel was ineffective for failing to object when the prosecutor told the jury that Mr. Williams, the other person charged in the robbery, would offer testimony even though Mr. Williams did not testify at trial. Second, Petitioner argues that trial counsel was ineffective for failing to permit the trial court to include second degree robbery on the jury's verdict sheet despite the fact that the trial court had charged the offense to the jury.

Petitioner raised this Claim in his post-conviction relief ("PCR") petition.  The last reasoned decision on this Claim was from the Appellate Division during petitioner's PCR proceedings.  The Appellate Division analyzed this Claim as follows:

> On appeal from the denial of his petition, defendant presents two arguments. First, defense counsel was ineffective for failing to "clearly delineate the second-degree [robbery] option on the verdict sheet." Second, defendant maintained his attorney was ineffective for failing to object to the prosecutor's opening statement when he implied that co-defendant Blair Williams would testify.

> We reject these arguments and affirm the order denying defendant's petition for PCR substantially for the reasons stated by Judge Michael A. Donio on December 3, 2010. We agree that defendant's allegations are insufficient to establish that defense counsel's performance fell below an objective standard of reasonableness as required by the first prong of the *Strickland/Fritz* test, and he also failed to show " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Marshall,* 148 *N.J.* 89, 157 (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 2064, 80 *L. Ed.*2d at 698), *cert. denied,* 522 *U.S.* 850, 118 *S.Ct.* 140, 139 *L. Ed.*2d 88 (1997). Defendant's arguments do not warrant any additional discussion. *R* . 2:11–3(e)(2).

(Dkt. No. 7-17 at p. 3.)

Because the Appellate Division affirmed "substantially for the reasons stated" by the

PCR court, this Court also considers the reasoning of the PCR court. *Ylst v. Nunnemaker*, 501

U.S. at 803. At a hearing, the PCR court addressed this Claim as follows:

> The claim is being made for ineffective assistance of counsel and, of course, we know it's a two prong test that has to be looked at by the Court, and that is that, first of all, a demonstration of a reasonable probability that, but for the errors of counsel's unprofessional errors, the result of the proceeding would have been different, and a reasonable probability is defined as a probability sufficient to undermine confidence in the outcome.

> Defendant first must show that counsel's performance was, in fact, deficient and therefore, he was not acting as counsel under the Sixth Amendment. Secondly, that the outcome would have been different. The prejudice must be proved by the defendant and can't be presumed. It also should be noted that ineffective assistance appeals under the case law have never been favored by the Courts.

> Also, in the case law, trial Court should grant an evidentiary hearing to resolve ineffective assistance claim if, when viewing the evidence in the light most favorable to the petitioner, petitioner's made out a prima facie case of a – in support of his PCR motion.

> . . . .

> Here defendant argues that he was effectively denied effective counsel by not allowing jury charges for lesser included offenses to be presented to the jury. The trial transcript shows there was a colloquy between this Court and Mr. Shenkus on that issue, and Mr. Shenkus espoused the defense position clearly, and it was the defense position that he basically used throughout the tria1, and that was one of identification. He said to the Court, after being asked if the verdict sheet needed to be amended in any any [sic], "Our defense is based on identification, we' re not raising any issues.

>> "The Court: So in other words, you acknowledge the fact that if he is found guilty that it is first degree robbery.

>> "Mr. Shenkus: As the verdict sheet and the indictment state, Yes.

"The Court: If he's found guilty you don't want then to have the opportunity to find second degree?

"Mr. Shenkus: I understand that, Judge, given the fact that there is another three, four counts in the indictment that talk completely about a gun.

"The Court: Well, I understand that, but I'm asking you if you want me to put in there, after count two, we find defendant guilty. If they found guilty, to put in there, if you found guilty, was he armed with a deadly weapon. Do you want that?

"No, I don't want that."

The colloquy goes on and on and on, but it is – it's obvious that the sole main defense of the defense was a strategy decision based on the identification, or lack thereof, or uncertainty of the identification because of how the incident occurred, the show-up, etcetera etcetera. And therefore, it was obviously a strategy decision where Mr. Shenkus did not want to give the jury a smorgasbord of charges to consider that would, in some way, send a message to the jury that my client might not be guilty of the most severe charge, you should look at lesser charges, where his defense was, it wasn't me and I'm not guilty of anything. So that is pure strategy decision and that is one that Mr. Shenkus gave, obviously, a lot of thought to.

The next issue that was raised is that trial counsel failed to object to a reference to codefendant Williams in the State's opening, and – and that that constituted ineffective assistance of counsel because Williams did not testify at trial. Defendant argues that any comment about him impressed the jury that the prosecutor had other information from another party who shared responsibility in committing the crime. Defendant argues failure to object prevented the Court from taking preventative action and was ineffective.

State responds that – that any statement in terms of alluding to proposed testimony of Williams, was basically ambiguous and not clear, and the comments were innocuous, therefore, they did not require Sixth Amendment compulsion or an objection by counsel and did not give a reasonable probability that the outcome of the proceeding would have been different.

Furthermore, the Court gave at least two instructions to the jury before the case and very strongly at the end of the case, as the Court always does, that the evidence in the case comes from the witness stand, that the comments of counsel are not controlling, and that if counsel say

something that's different from the testimony, you are to go with the testimony of the witnesses after you observe their credibility and their demeanor and their believability. So the jury was told at least on two occasions that what the lawyers say in their opening and closing is not evidence and the evidence comes from the witness stand.

. . . .

It would, therefore, appear that under the *Strickland Fritz*, two prong standard, it would appear that the defendant does not make out a case for relief, in my view, on either standard, but most definitely on the second standard. The proofs in the case were strong. The eye witness victims who were robbed, if you will, had an opportunity to observe the defendants, the DSW bag that they made reference to was found in the car, the gun was found in the car in plain view, the show-up took place within an hour and the identifications were made and they were not done in an impermissible manner, and that was already addressed by the Appellate Division.

All the other instances complained of, quite frankly, in the case go to what can only be considered trial strategy, not to seek lesser include offenses, to insinuate, again, to the jury that my client didn't commit this horrible first degree act, maybe he committed a second or third degree act, when the defense was clearly basically and succinctly was put forth before the jury as one of identification. That's a strategy decision and it does not mean that counsel is deficient in any way for coming into a strategy decision that five other lawyers may disagree with. It's a strategy decision, and quite frankly, having tried numerous cases with Mr. Shenkus, and absolutely remembering this case and the trial, which is of benefit when you are the trial Judge, it is my view, for the record, that Mr. Shenkus raised all appropriate objections that should have been made, made tactical, strategic decisions that he thought should be made and made sense in the case, and argued vociferously that the Court should not give a [sic] extended term sentence, which the Court agreed with and did not give a [sic] extended term sentence based on his arguments.

Therefore, for all of those reasons, the defendant's application fails under *Strickland*, in my view, under both prongs of the case, and the application for post-conviction relief is, therefore, denied.

(Dkt. No. 7-5 at pp. 6-15.)

The denial of this Claim by the state courts was not an unreasonable application of

clearly established federal law.  The Appellate Division cited to and applied the *Strickland* test to

determine whether the PCR court properly denied this Claim and specifically relied on the reasons given by the PCR court. The PCR court also stated and applied the correct *Strickland* standard. Specifically, the PCR court concluded that trial counsel made all appropriate objections that should have been made and that counsel's decision not to permit inclusion of second degree robbery on the verdict sheet was a reasoned strategic decision. The Court further addresses each of these points below.

1. Counsel's Failure to Object to the Prosecutor's Reference to Williams

In his PCR petition, Petitioner argued that his trial counsel was ineffective for failing to object when the prosecutor told the jury in his opening statement that Blair Williams, the co-defendant whose criminal action proceeded separately from Petitioner's, would testify to certain facts even though he did not in fact testify. The challenged portion of the opening statement was as follows:

> Again, Rando is going to tell you, I didn't hit my lights; I didn't turn my sirens on, but the car past [sic] me in the opposite direction and pulls over on the other side of the road. Rando is going to tell you there is less than ten feet from the car when the driver door emerges and this defendant gets out. *Blair Williams will tell you*, the other individual, he gets out of the passenger side seat and they start to walk.

(Dkt. No. 7-1 at p. 9. (emphasis added).) The PCR court concluded that trial counsel raised all appropriate objections and that Petitioner had not satisfied either prong of the *Strickland* test and, in particular, the prejudice prong. In finding that Petitioner had failed to show prejudice, the court observed that the evidence in the case was strong and specifically noted the eye witness testimony and the discovery of implements of the crime in the vehicle Petitioner and Mr. Williams occupied. That court also noted that it had provided the jury with instructions stating that the attorneys' statements were not evidence and were not controlling. This Court concludes that the PCR court's denial of this Claim was not based on an unreasonable application of federal

law or an unreasonable determination of the facts. Given the court's admonitions to the jury and the evidentiary record in the case, Petitioner has not shown that the result of his trial would have been different if his counsel had objected to the prosecutor's remark. Petitioner is therefore not entitled to habeas relief on this claim and it will be denied.

2. Counsel's Failure to Permit Inclusion of Second Degree Robbery on the Verdict Sheet

Relief also will be denied on Petitioner's claim regarding counsel's failure to permit inclusion of second degree robbery on the verdict sheet. Under relevant New Jersey law, "[r]obbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor . . . is armed with, or uses or threatens the immediate use of a deadly weapon." N.J. STAT. ANN. § 2C:15-1. In addressing this claim, the PCR court cited to the trial transcript reflecting trial counsel's decision not to include language designating second degree robbery. As the PCR court noted, the defense strategy was one of misidentification; that is, Petitioner was not involved in the robbery in any way—let alone to some lesser degree than that charged—and the defense therefore was not based on the absence of a weapon. (*See* Dkt. No. 7-3 at pp. 18-21.)  Indeed, at trial, the victim identified the weapon found in the vehicle occupied by Petitioner and Mr. Williams as the one used during the robbery. (Dkt. No. 7-1 at pp. 20-21.) Thus, the PCR court's denial of this claim, based on its determination that counsel's decision not to include second degree robbery was a strategic choice, was not based on an unreasonable application of *Strickland*.

To succeed on an ineffective assistance claim, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry,*

540 U.S. 1, 8 (2003) (per curiam) (citing *Bell v. Cone,* 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison,* 477 U.S. 365, 382 (1986); *Strickland,* 466 U.S. at 689; *United States v. Cronic,* 466 U.S. 648, 656 (1984)). The PCR court considered counsel's decision in light of the overall defense strategy and did not unreasonably apply federal law in finding that counsel provided reasonable professional assistance. Moreover, the PCR court's determination that Petitioner had not satisfied the prejudice prong because of the weight of the evidence also was reasonable because Petitioner did not demonstrate a reasonable probability that the outcome of the trial would have been different had second degree robbery been included on the verdict sheet. Furthermore, Petitioner fails to show that the denial of this claim was based on an unreasonable determination of the facts. Therefore, petitioner is not entitled to federal habeas relief on Claim IV.

E. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

## V.    CONCLUSION

For the foregoing reasons, petitioner's habeas petition will be denied and a certificate of appealability shall not issue. An appropriate order will be entered.


DATED:  November 10, 2017

> s/Robert B. Kugler
> ROBERT B. KUGLER
> United States District Judge